### In re ESTATE OF Herbert B. JORDAN;

**Calvin Brooks, et al., Appellants.**

**No. 07–PR–68.**

District of Columbia Court of Appeals.

Submitted Sept. 10, 2008.

Decided Sept. 18, 2008.

Before NEBEKER, TERRY and SCHWELB, Senior Judges.

NEBEKER, Senior Judge:

Appellants Calvin Brooks and Dalton Howard, former counsel for James Nero in his capacity as personal representative of the estate of Herbert Jordan, appeal from the trial court's denial of their petition to order Nero to pay outstanding attorney fees.[1] Specifically, appellants argue the trial court erred in ruling the estate was closed, barring their claim against Nero. Appellants also contend the trial court failed to determine whether the statute of limitations for personal liability claims against personal representatives precluded their claim against Nero. We cannot accept their arguments, and accordingly, affirm.

## I.

Because appellants have provided us with very few facts and a minimal record, we set forth only the facts that find support in the relevant hearing transcript and appellants' appendix. In November 1999, Nero retained appellants to represent him as personal representative of Jordan's estate.[2] After the probate of the estate, Nero filed a final accounting with the Register of Wills on January 3, 2005. On March 11, 2005, the Probate Division of the Superior Court sent Nero a Notice of Audit, requesting explanations for certain expenses detailed on the final accounting. Appellants also received a copy of the Notice of Audit some time after March 11, 2005, but were not aware Nero had filed a final accounting. According to appellants, they told Nero he should not have filed the final accounting without their assistance and directed him to consult with them

---

Karl W. Carter was on the brief for appellants.

No brief was filed on behalf of appellee.

1. Neither Nero nor the estate has filed a brief on appeal.

2. The relationship between Nero and Jordan is unclear.

prior to taking any other action with the court.

The next communication documented in the record before us took place over a year later in June 2006.[3] In a letter dated June 20, 2006, Nero referenced a June 9, 2006, letter from appellants attaching their revised invoice for attorney fees totaling $8,177.50. Nero explained that he had already sent appellants a check for $150, which they had listed as the only outstanding balance on a "Statement of Account" submitted to the Probate Division of the Superior Court.[4] Nero also stated the estate was closed, and therefore, appellants' request was "outside the ruling of the Court." Appellants responded by letter dated June 28, 2006, and referenced a phone conversation between the parties the previous day. Appellants also repeated their demand that Nero send a check for the outstanding attorney fees.

On July 28, 2006, after Nero failed to respond to appellants' requests for payment, appellants filed a "Petition to Order [Nero as personal representative] to Perform His Official Duties." Specifically, appellants asked the trial court to order Nero to pay the $8,177.50 in attorney fees they claimed he owed. By order dated August 23, 2006, the trial court ordered the parties to submit briefs to determine whether the court had jurisdiction to entertain the petition.[5] The trial court held a hearing to address the motion and the issue of jurisdiction on December 8, 2006, and denied appellants' motion the same day. The trial court found the estate was closed according to the governing statutory provisions. The trial court also noted, and appellants did not dispute, that the estate had no money because all distributions had been made. Next, the trial court concluded appellants were unable to show good cause for re-opening the estate despite their claim that Nero owed them just over $8,000 in legal fees. The trial court based its conclusion on the fact that appellants (1) indicated in a January 9, 2005, letter[6] to Nero that they were planning on sending him a revised invoice within a few weeks; and (2) failed to object to the closing of the estate until July 28, 2006, when they filed their petition with the court. Moreover, the trial judge found that the delayed filing of appellants' petition exceeded the limitations period.

## II.

### A.

■ Appellants first argue the trial court erred in concluding the estate was closed pursuant to the provisions of D.C.Code § 20–1301(c) (2001).[7] They further contend that, notwithstanding subsec-

3. We note that in the addendum to his response to appellants' memorandum of law concerning the issue of jurisdiction, Nero claimed he received an initial invoice from appellants on or about October 15, 2003, listing attorney fees from November 1999 through October 2003. Nero attached the invoice to the addendum, but the invoice is undated. At an appointment to discuss the invoice, Nero said he questioned certain entries on the invoice. In response, appellant Howard told Nero to review the invoice at home and "give us a call." Although it is unclear from the record, it appears that neither Howard nor Brooks pursued the issue until June 2006.

4. Appellants did not provide a copy of this document in their appendix.

5. The trial court ordered the parties to brief the issue because appellants failed to state the provision under which they sought relief.

6. Appellants did not provide a copy of this letter, but the trial judge referenced it at the hearing.

7. All references to provisions of the District of Columbia Code are to the 2001 edition.

tion (c), Nero was obligated to pay the attorney fees appellants claim he owes. We discern no error in the trial court's conclusions that the estate was closed and that appellants failed to show good cause for re-opening it.

D.C.Code § 20–1301(b) states that, unless good cause is shown, "an estate administered in an unsupervised administration shall be closed" by either the personal representative's filing a Certificate of Completion with the court or, if no Certificate is filed, then by termination of the appointment of the personal representative as set forth in subsection (c). Section 20–1301(c) states in relevant part:

If no Certificate of Completion is filed by a personal representative in an unsupervised administration, then the appointment of the personal representative shall terminate automatically on the date which is 3 years after the appointment of the personal representative, or on the later expiration of any extension of the appointment granted by the Court.

Section 20–1301(d) provides that "[n]either the closing of the estate nor the termination of the personal representative's appointment shall prohibit the personal representative from thereafter performing whatever final administrative actions may be necessary to complete the affairs of the estate." We review the trial court's interpretation of a statute *de novo*. *In re Estate of Sato*, 878 A.2d 1247, 1250 (D.C. 2005).

At the December 8, 2006, hearing, the trial court first found the estate was unsupervised. Next, the trial court found that Nero's appointment as personal representative of the estate commenced on May 1, 2002, and expired on May 1, 2005. Appellants did not object to these dates or present alternative dates for the court's consideration. Thus, because Nero never filed a Certificate of Completion and the estate was unsupervised, the estate closed on May 1, 2005, three years after Nero was appointed as personal representative.[8] D.C.Code § 20–1301(b)(A), (c). We discern no error in these findings.

■ Notwithstanding the trial court's finding that the estate was closed, appellants argue for the first time on appeal that D.C.Code § 20–1301(d) compels Nero to pay the alleged outstanding attorney fees. We reject this argument, as well, based on (1) the trial court's finding, to which appellants did not object, that there was no money left in the estate, and (2) appellants' failure to preserve the issue for appellate review.[9] *See, e.g., District of Columbia v. Helen Dwight Reid Educ. Found.*, 766 A.2d 28, 33–34 n. 3 (D.C.2001) (party's failure to make argument in trial court waives that argument on appeal).

■ We also find no error in the trial court's conclusion that appellants failed to show good cause for re-opening the estate. Appellants argued the estate should be re-opened to resolve their dispute with Nero. The trial court rejected their argument, reasoning appellants could have, but did not, alert Nero or the court to the outstanding attorney fees they claim Nero

---

8. Appellants argue that the estate was not closed because the trial court found Nero had not complied with the provisions of D.C.Code § 20–1301(b)(A), which require that a personal representative file with the court a Certificate of Completion as described in D.C.Code § 20–735. Appellants ignore the alternative means for closing an estate, set forth in D.C.Code § 20–1301(b)(B), which, as we observe, *supra*, provides for automatic termination under D.C.Code § 20–1301(c).

9. Although we do not have the benefit of the parties' memoranda of law that preceded the December 8, 2006, hearing, appellants did not refer to D.C.Code § 20–1301(d) in their argument to the trial court.

owes. Indeed, when the trial court noted appellants had received a copy of the Notice of Audit in March 2005, appellant Howard conceded he and his partner knew the estate would soon close, yet failed to ask the court to keep the estate open to allow them to resolve the dispute. In light of appellants' concessions that they knew of a potential dispute over legal fees over a year prior to their petition to the trial court, we cannot say the trial court abused its discretion in refusing to re-open the estate.

### B.

■ Next, we turn to appellants' assertion that the trial court erred in concluding their petition to order Nero to pay legal fees was not timely filed. Appellants also argue the trial court failed to determine whether the limitations period for claims of personal liability against a personal representative applied to their claim.

D.C.Code § 20–1303(a) provides, in pertinent part, that once an estate administered in an unsupervised administration is closed, "any claim of *personal liability* against a personal representative, except for fraud" may be brought within one year after the personal representative's appointment has been terminated.[10] (Emphasis added.) In cases where no Certificate of Completion has been filed, however, § 20–1303(a) extends the limitations period by three months, allowing for a party to file a claim for personal liability up to fifteen months after the termination of the appointment of the personal representative. By contrast, § 20–903(a)(2), on which the trial court based its ruling, provides that "all claims against the estate based on the conduct of or *a contract with a personal representative* shall be barred unless an action is commenced against the estate within 6 months of the date the claim arose." (Emphasis added.)

Because appellants' argument depends upon the assumption that their claim against Nero was for personal liability and not based on their retainer agreement with him, we first examine that issue. At the December 8, 2006, hearing, the trial court asked appellants whether they were seeking the attorney fees from the estate or from Nero himself. Appellant Howard said he and his partner would "leave that to the court" because he was unsure of where the money should be coming from. Later, the trial court brought to appellants' attention D.C.Code § 20–903(a)(2), which requires a claim against the estate based on a contract with the personal representative must be brought within six months of the date the claim arose. The trial court found that § 20–903(a)(2) applied, and thus, that appellants untimely filed their claim.

We agree with the trial court's ruling that § 20–903(a)(2) governed their claim, and we infer from the trial court's application of § 20–903(a)(2) that it implicitly ruled that § 20–1303(a) did not apply. In applying § 20–903(a)(2) to appellants' claim, the trial court found the claim arose from a retainer agreement the parties signed in November 1999. Indeed, at the hearing, appellants stated that Nero had

10. The full text of subsection (a) reads:

> *Proceedings against personal representative.*—Unless otherwise barred, any claim of personal liability against a personal representative, except for fraud, and except as provided in section 20–736, shall be barred one year from the date of distribution of all the assets and satisfaction of all known claims against the estate. Unless shown by the personal representative to be earlier, the date of such distribution and satisfaction in an unsupervised administration shall be deemed to be the date of the filing of the Certificate of Completion or, if none, 3 months after the termination of the appointment of the personal representative.

hired them to represent him in his capacity as personal representative, as set forth in the retainer agreement. Moreover, the basis for their claim was not one for personal liability; rather, appellants simply alleged that Nero failed to pay attorney fees in breach of the parties' retainer agreement. Further, appellants have not argued here or to the trial court that their claim is one for personal liability.

We must next determine when the dispute over legal fees arose to calculate when the six-month limitation period for bringing the claim expired. Although the trial court found appellants knew of the dispute in January 2005, there are in fact two dates on which appellants arguably became aware of their claim, neither of which is in January 2005. As discussed in footnote 3, *supra*, appellants sent Nero an invoice on or about October 15, 2003, and Nero said he disputed the invoice with appellants. The second date on which the claim arguably arose was shortly after March 11, 2005, when appellants received the Notice of Audit, which notified them that the estate had been closed and that Nero had not paid their fees. However, we need not decide on which date the claim arose because, using either date, appellants filed their claim beyond the six-month limitations period. If the claim accrued on October 15, 2003, the six-month limitations period expired on April 15, 2004. Calculating the six-month limitations period beginning March 17, 2005, the date on which appellants presumably received the March 11 Notice of Audit,[11] the time for filing the claim expired on September 17, 2005. Appellants filed their petition on July 28, 2006, well after the claim against Nero accrued using either date. We, therefore, find adequate support for the trial court's conclusion that

appellants' claim against Nero was based on a contract with Nero pursuant to D.C.Code § 20–903(a)(2), and that appellants' failure to file their claim served as a jurisdictional bar to the relief they sought from the trial court.

Accordingly, we affirm the trial court's denial of appellants' petition seeking attorney fees.

*So ordered.*

---

11. We assume appellants received the Notice of Audit on or shortly before March 17, 2005, because that is the last entry on their Second Revised Request for Compensation.